**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Adams,<br><br>        Plaintiff,<br><br>v.<br><br>Conn Appliances Inc., d/b/a Conn's HomePlus,<br><br>        Defendant. | No. CV-17-00362-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant Conn Appliances' motion to dismiss or stay the proceedings and compel arbitration. (Doc. 11.) The motion is fully briefed. (Docs. 25, 32.) For reasons that follow, the motion is granted.[1]

## BACKGROUND

Conn Appliances, which does business as Conn's HomePlus (Conn's), is a consumer goods retailer headquartered in Texas that operates eleven stores in Arizona. (Doc. 1 ¶¶ 11-12.) Plaintiff Scott Adams worked at the Conn's location in Goodyear, Arizona as a full-time salesperson from September 2014 until his termination on May 13, 2016. (¶ 10.) Adams alleges that he suffered racial harassment and discrimination from a supervisor and a sales associate at Conn's, that none of his managers were responsive to his complaints, and that he ultimately was terminated in retaliation for filing a complaint

---

[1] The request for oral argument is denied because the issues are adequately briefed and oral argument would not aid the Court's decision.

with the EEOC. (¶¶ 20-78.)

When Adams began employment with Conn's, he signed a Dispute Resolution Plan (DRP) that includes a "mandatory binding arbitration procedure." (Doc. 11-2 at 2-11.) The DRP provides that any disagreements that arise during or after termination of employment with Conn's must be submitted to binding arbitration. (*Id.* at 5.) The DRP specifically required Adams to arbitrate any claim "regarding or relating to employment discrimination terms and conditions of employment." (*Id.*) The DRP also includes a provision (the "delegation clause") stating that issues of arbitrability will be submitted to arbitration: "[This agreement] [c]overs any dispute concerning the arbitrability of any such controversy or claim." (*Id.*)

According to Adams, he was not aware of either the existence or terms of the DRP when he signed it. (Doc. 26 ¶¶ 6, 14.) Adams has no legal training or college education. (¶ 2.) He signed the form at the end of a two-week training program in Texas, and the woman directing the employment training sped through the papers requiring signatures without giving Adams sufficient time to read them. (¶¶ 5-13.) Adams did not feel entitled to change the terms and believed that his job hinged on whether he signed each page. (¶¶ 14-16.)

On February 3, 2017, Adams filed a complaint against Conn's pursuant to Title VII and the Arizona Civil Rights Act, asserting race discrimination and retaliation claims. (Doc. 1.) Shortly thereafter, Conn's moved to dismiss or stay the action and compel arbitration. (Doc. 11.)

## **LEGAL STANDARD**

The Federal Arbitration Act (FAA) provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable except upon grounds that exist at common law for the revocation of a contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (discussing liberal federal policy favoring valid arbitration agreements). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed

to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The court's role is to answer two gateway questions: does a valid agreement to arbitrate exist, and does the agreement encompass the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both questions are answered in the affirmative, the court must compel arbitration.

"Where a contract contains an arbitration clause, courts apply a presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (internal citations omitted); *see also AT&T Mobility*, 563 U.S. at 339 ("We have described [§ 2 of the FAA] as reflecting . . . a 'liberal federal policy favoring arbitration[.]'"). Despite this federal policy favoring arbitration, state law is not entirely displaced from federal arbitration analysis because "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Ticknor v. Choice Hotels Int'l*, 265 F.3d 931, 936-37 (9th Cir. 2001) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996)). Unless the challenge is to the arbitration clause itself, however, "the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Parties may also agree to delegate threshold issues of arbitrability to the arbitrator, even though these issues presumptively are reserved for the court. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010) (holding that delegation of authority to arbitrator to determine the enforceability and scope of arbitration agreement was valid under FAA). A discrete agreement to submit gateway arbitrability questions to the arbitrator is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce[.]" *Rent-A-Ctr.*, 561 U.S. at 70. In other words, a delegation provision is severable from the

contract in which it is embedded, and challenges to the validity of the latter must be considered by the arbitrator in the first instance. *Id.* at 70-72.

Significantly, however, the same presumption of arbitrability does not apply to agreements delegating authority over the enforceability of arbitration agreements. Rather, "the Supreme Court has cautioned that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.'" *Momot*, 652 F.3d at 987 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Such clear and unmistakable evidence of agreement to arbitrate arbitrability might include "a course of conduct demonstrating assent" or "an express agreement to do so.'" *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 79-80).

## **ANALYSIS**

Adams argues that the delegation clause and the arbitration agreement as a whole are unconscionable. (Docs. 37 at 9, 26 at 5-16.) Adams also contends that Conn's waived its right to arbitrate by complying with a separate action filed with the EEOC and by failing to adhere to the terms set out in the DRP. (Doc. 26 at 16-17.) Conn's argues that the Court should confine its analysis to questions concerning the enforceability of the delegation clause because the parties clearly and unmistakably agreed to arbitrate questions of arbitrability. (Doc. 32 at 4.) As a threshold matter, then, the Court must determine whether the parties' intent to arbitrate questions of arbitrability is clear and unmistakable and, if so, whether such delegation is enforceable under general contract principles. Only if the parties' intent is unclear or if the delegation clause is otherwise unenforceable will the Court then consider challenges to other aspects of the arbitration agreement.

### **I. Validity of the Delegation Clause**

Adams contends that he was not "on notice that an arbitrator will determine [his] contract enforceability defenses." (Doc. 37 at 9.) He states that the arbitration agreement covers only claims delineated in section 2(a)(ii), which "includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for

which the applicant, employee or former employee has an alleged cause of action, regarding or relating to employment discrimination; terms and conditions of employment; or cessation or termination of employment[.]" (Doc. 11-2 at 4.) This interpretation, however, cannot be squared with the plain language of the contract. The DRP's delegation clause, found in section 2(a)(i), explicitly "[c]overs *any dispute concerning the arbitrability* of any such controversy or claim." (*Id.* (emphasis added).)

The Supreme Court and this Circuit repeatedly have concluded that similar delegation language is sufficiently clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability. *See, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 68; *Momot*, 652 F.3d at 988 (language delegating to the arbitrator the authority to determine "the validity or application of any of the provisions" of the arbitration clause was clear and unmistakable); *Tuminello v. Richards*, 504 F. App'x 557, 558 (9th Cir. 2013) (language providing that an arbitrator shall decide "any and all controversies" concerning "the construction, performance, or breach of this or any other Agreement" was sufficiently clear and unmistakable to delegate arbitrability); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011) (language providing that any disputes "arising out of or relating to" the arbitration provision would be reserved for the arbitrator was sufficient evidence of an intent to clearly and unmistakably delegate arbitrability). The Court sees no reason to deviate from these authorities, particularly when the central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2012) (internal quotations omitted).

Given the plain language of the delegation clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of arbitrability. The Court will strictly apply severability principles and confine its analysis to the discrete agreement to arbitrate.

**II. Unconscionability**

Notwithstanding the parties' clear and unmistakable intent to arbitrate questions of

arbitrability, the delegation clause may be unenforceable if it is unconscionable. *Rent-A-Ctr.*, 561 U.S. at 72-74. When assessing whether a delegation clause is unconscionable, a court must sever it from the arbitration provision in which it is embedded. "It is not sufficient to prove that the arbitration provision as a whole, or other parts of the contract, are unenforceable." *Id.* at 71-74.

### A. Procedural Unconscionability

"Procedural unconscionability is concerned with unfair surprise; courts examine factors influencing 'the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible[.]'" *Wernett v. Serv. Phx., LLC*, No. CIV 09-168-TUC-CKJ, 2009 WL 1955612, at *3 (D. Ariz. July 6, 2009) (quoting *Maxwell v. Fidelity Fin. Servs.*, 907 P.2d 51, 58 (Ariz. 1995)). The court also considers whether the terms comport with the parties' reasonable expectations. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 392-99 (Ariz. 1984).

Terms might run counter to the parties' reasonable expectations when one party "has reason to believe that the other party would not have accepted the agreement if he had known the agreement contained the particular term." *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1050 (Ariz. Ct. App. 2005). Importantly, however, "[m]ere inequality in bargaining power is not sufficient to invalidate an arbitration agreement." *EEOC v. Cheesecake Factory, Inc.*, No. CV 08-1207-PHX-NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). Even where terms are non-negotiable or the weaker party does not understand all of them, an agreement will be enforced so long as it is neither unreasonable nor unduly oppressive. *Id.* (citing *Phx. Baptist Hosp. & Med. Ctr. v. Aiken*, 877 P.2d 1345, 1349 (Ariz. Ct. App. 1994); *Broemmer v. Abortion Servs. of Phx., Ltd*, 840 P.2d 1013, 1016 (Ariz. 1992)).

Adams argues that his age and educational background show that he was unable to

bargain with Conn's on equal terms. He also claims that he did not know the terms of the DRP, and argues that the agreement is procedurally unconscionable because he was not given an opportunity to read the DRP before Conn's asked him to sign it following a long and exhausting day of training.

Arizona law, however, requires more. For example, in *Coup v. Scottsdale Plaza Resort, LLC*, the court found no procedural unconscionability where the plaintiffs relied on their ages to demonstrate unequal bargaining power, but failed to show that they tried to bargain with the employer when asked to sign an employment agreement, asked for more time to read the agreement, or asked not to sign altogether. 823 F. Supp. 2d 931, 948-49 (D. Ariz. 2011) ("There is no evidence that Dawson placed the Acknowledgments before Plaintiffs on a take-it-or-leave-it basis, threatened to fire them if they refused to sign them, forced them to sign the Acknowledgments on the spot or else, or forbade them from reviewing the Acknowledgments with counsel or anyone else they saw fit."); *see Wernett*, 2009 WL 1955612, at *4 (finding employer had no reason to believe plaintiff would not have accepted the agreement had she known its terms).

Similarly, Adams has not shown that he asked for more time to read the agreement, that he would not have been hired had he failed to sign, or that he would not have signed had he read and understood the terms. More importantly, however, he does not focus his analysis on the delegation clause itself. Instead, he asserts only that he would not knowingly surrender his Title VII rights, which is separate from whether he would have agreed to assign arbitrability issues to an arbitrator. Under the circumstances, Adams has not established that the delegation clause is procedurally unconscionable.

**B. Substantive Unconscionability**

"Substantive unconscionability addresses 'the actual terms of the contract and . . . the relative fairness of the obligations assumed.'" *Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 769 (Ariz. Ct. App 2014) (quoting *Maxwell*, 907 P.2d at 58)). "Relevant factors include whether the contract terms are so one-sided as to oppress or unfairly

surprise an innocent party, whether there is an overall imbalance in the obligations and rights imposed, and whether there is a significant cost-price disparity." *Id.*

Adams argues that the delegation clause is substantively unconscionable because Conn's retains a unilateral ability to modify its terms.[2] The DRP states that Conn's retains "the right to change, modify or eliminate [the DRP] at any time" with notice "10 days prior to any change." (Doc. 11-2 at 9.) Although the unilateral modification provision applies to all parts of the DRP, the Court is not persuaded that this provision renders the delegation clause unconscionable, particularly when Conn's has not exercised this right at all, let alone to alter the clause. *See Sena v. Uber Techs. Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, at *7 (D. Ariz. Apr. 7, 2016) (declining to consider unilateral modification provisions when the analysis was limited to a delegation clause); *Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1111 (D. Ariz. 2014) (concluding that an arbitration agreement giving the employer the sole right to modify or terminate the agreement was not substantively unconscionable when the employer had not used the unilateral modification clause and the plaintiffs were faced with the exact terms to which they originally agreed).

Adams next contends that the DRP's $175 arbitration filing fee (Doc. 11-2 at 9) is substantively unconscionable because it places an unreasonable burden on him, particularly as a newly unemployed individual. Adams cites *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir. 2003), for the proposition that costs that may not appear prohibitive may be so for litigants who have been recently terminated. As Conn's points out, however, the cost of the arbitration filing fee is less than half of the fee Adams paid to file the present complaint. (Doc. 32 at 8.) Moreover, the provision objected to in *Morrison* was a cost-splitting provision, rather than a minimal filing fee. The Court finds that the filing fee provision does not render the DRP substantively unconscionable.

---

[2] Adams also claims that the DRP is substantively unconscionable because it considerably abridges his statutory rights by shortening the statute of limitations for his Title VII claims. This latter argument, however, is challenge to the enforceability of the DRP itself, not to the parties' discrete agreement to arbitrate issues of arbitrability.

- 8 -

**III. Waiver**

Adams contends that Conn's has waived its right to compel arbitration both by complying with an EEOC investigation and by failing to comply with the terms of arbitration set out by the DRP. (Doc. 25 at 16-17.) To establish a waiver of the right to compel arbitration under the FAA, the party asserting the defense must demonstrate that the party seeking to compel arbitration knew of an existing right to compel arbitration but acted inconsistently with it, causing prejudice to the party opposing arbitration. *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). The party asserting the waiver defense bears a heavy burden of proof. *Id.* Conn's clearly knew of its right to compel arbitration given that it drafted the DRP. The Court therefore focuses its analysis on the second and third elements of the waiver analysis.

**A. Conn's Participation in EEOC Proceedings**

Adams contends that Conn's repudiated the DRP agreement by participating in the EEOC process, including by responding to a separate complaint filed with the EEOC and participating in an EEOC administrative investigation without raising the arbitration defense. (Doc. 25 at 17.) Conn's responds that its participation in the EEOC proceedings is not a waiver because the mere existence of an arbitration agreement does not affect the EEOC's statutory authority. The Court agrees. Even the strong "proarbitration policy goals of the FAA do not require the [EEOC] to relinquish its statutory authority if it has not agreed to do so." *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Moreover, even if Conn's participation in the EEOC proceedings was inconsistent with its right to compel arbitration, Adams has not shown that this inconsistent behavior caused him prejudice. Thus, Conn's did not waive its right to arbitrate by participating in the EEOC proceedings.

**B. Conn's Alleged Failure to Adhere to the DRP**

Adams next argues that Conn's waived its right to arbitrate by failing to adhere to the terms of the DRP. The DRP states that, before submitting an employment dispute to binding arbitration, "both [the employee] and Conn's agree to make good faith efforts at

- 9 -

resolving any dispute internally by following Conn's Internal Resolution Process as it may be appropriate to that particular dispute." (Doc. 11-2 at 6.) The four-step internal resolution process directs employees to report issues to progressively higher supervisors, and directs supervisors to provide employees written responses. (*Id.* at 4-5.) The process further requires that any complaint related to discrimination based on race "<u>must</u> be reported immediately, by the manager, to the director of human resources." (*Id.*) Finally, it specifies that "an employee cannot use binding arbitration unless they have first completed the internal dispute resolution process." (*Id.* at 8.)

Adams contends that Conn's failed to provide him with a written response to his complaints or to forward his complaints to the director of human resources, constituting a waiver of its right to arbitrate. (Doc. 25 at 17.) Furthermore, he states that neither his store nor his district manager reported his racial harassment claims to the human resources manager for Arizona, who was unaware of his situation when he personally escalated the matter to her. (Doc. 1 ¶ 53.) By the plain terms of the agreement, however, the internal process is required only "as it may be appropriate," and although an employee cannot initiate arbitration before fulfilling the internal dispute resolution process requirements, the same restriction is not placed on the employer. (Doc. 11-2 at 6.) Adams therefore has not shown that Conn's behavior was incompatible with the DRP, nor has he shown resulting prejudice. The Court therefore finds no waiver.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that the parties entered into a valid and enforceable agreement to arbitrate questions of arbitrability. Although Adams questions whether the DRP and the remainder of the arbitration clause are enforceable, the parties have clearly and unmistakably reserved those questions for the arbitrator to resolve. The Court therefore must compel arbitration of those issues.

Under the FAA, the Court has discretion to either dismiss or stay a case that has been referred to arbitration pursuant to a written agreement. *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007). Here, because the arbitrator will

first be confronted with threshold issue of arbitrability, the Court will stay this matter pending arbitration and retain jurisdiction in the event that the arbitrator determines that the arbitration provision is unenforceable or inapplicable, or to enforce any arbitral award.

**IT IS ORDERED** that Defendant Conn's motion to dismiss is **DENIED**, its alternative motion to stay proceedings and compel arbitration (Doc. 11) is **GRANTED** as set forth above, and its motion to strike Plaintiff's statement of facts or for additional time to respond (Doc. 33) is **DENIED** as moot. The Clerk is directed to close this case, whereupon, by proper motion of the prevailing party at arbitration, it may be reopened or dismissed with prejudice.

Dated this 1st day of August, 2017.

Douglas L. Rayes
United States District Judge